IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division
5:23-CV-305-M-RN

| | |
|---|---|
| EXPRESS GENE LLC d/b/a<br>EXPRESS GENE MOLECULAR<br>DIAGNOSTIC LABORATORY,<br><br>        Plaintiff,<br><br>    v.<br><br>TECAN U.S., INC.,<br><br>        Defendant. | **OPINION AND ORDER** |

This matter is before the court on Defendant's Motion to Dismiss for Failure to State a Claim ("Motion"). [D.E. 41]. Plaintiff opposes the motion. [D.E. 48]. For the reasons that follow, the Motion is GRANTED in part.

### I. Background

Plaintiff Express Gene LLC d/b/a Express Gene Molecular Diagnostics Laboratory ("Express Gene") is a Florida-based organization that operates as a Clinical Laboratory Improvement Amendments ("CLIA") certified laboratory, with a primary focus on genetic testing, such as pharmacogenomics. [D.E. 38] ¶¶ 5—6. Defendant Tecan U.S., Inc. ("Tecan US") is a North Carolina based manufacturer and seller of automated laboratory systems, including the DreamPrep unit. *Id.* at ¶¶ 9—10. According to Plaintiff, the DreamPrep is a machine designed for automated processing of samples that can be used for Next-Generation Sequencing ("NGS"). *Id.* at ¶ 11. NGS is a new technology used for DNA and RNA sequencing and disease variant detection. *Id.* at ¶ 12.

In 2020, Plaintiff began communicating with Defendant about buying a DreamPrep unit. *Id.* at ¶ 15. During these communications, Defendant provided Plaintiff with some DreamPrep marketing materials. *See* [D.E. 38-1]; [D.E. 38-2]. Plaintiff alleges these brochures contain numerous representations about the DreamPrep's capabilities. *Id.* at ¶¶ 16—18. Induced by these representations, Plaintiff executed

a purchase order with Defendant on October 27, 2020 for a "Fluent 780 NGS DreamPrep" and system specific training for the unit. [D.E. 38] ¶¶ 20—21; *see generally* [D.E. 38-3]. Additionally, Plaintiff ordered $661.26 of DNA sequencing materials from Defendant to use with the DreamPrep. *Id*. at ¶ 24; *see generally* [D.E. 38-5]. Plaintiff had paid for the DreamPrep in full by December 11, 2020. *Id*. at ¶ 23.

Plaintiff alleges that in early 2021, the DreamPrep began severely malfunctioning. *Id*. at ¶ 25. On May 14, 2021, Plaintiff informed Defendant of the three main issues it was having with the DreamPrep and its "TruSeq" script. *Id*. at ¶ 26. Specifically, Plaintiff stated "(1) the two far right tips were failing to pick samples up, (2) the waste deep well plate was nearing capacity as a result of these failures, and (3) it was unsure as to which script was the main operating software." *Id*. In response to Plaintiff's complaints, Defendant checked on the DreamPrep and reported "a problem with the . . . instrument initializing." *Id*. at ¶ 28. After purportedly fixing this issue, Defendant reported that the DreamPrep was working properly. *Id*.

Despite DreamPrep's investigation and repair on May 24, 2021, Plaintiff claims that problems persisted. *Id*. at ¶ 29. On June 4, 2021, Plaintiff sent an email highlighting thirteen ongoing issues with the DreamPrep unit. *Id*.; *see* [D.E. 38-6]. According to Plaintiff, the issues identified in the June 4, 2021 email were never resolved and made the DreamPrep unusable; as of today, the unit is sitting in storage at Plaintiff's expense. *Id*. at ¶ 31.

Plaintiff initiated this suit in April 2023 in the Southern District of Florida. [D.E. 1]. Pursuant to parties' forum selection clause, Defendant filed an unopposed motion to transfer to the Eastern District of North Carolina. *See* [D.E. 16]; [D.E. 18]. On June 8, 2023 the case was transferred to this court. [D.E. 19]. Later, the court granted Plaintiff's unopposed motion for leave to file its Second Amended Complaint. [D.E. 37]. In its Second Amended Complaint, Plaintiff asserts the following claims against Defendant: (1) negligent misrepresentation; (2) negligent manufacturing defect; (3) warranty manufacturing defect; (4) breach of express warranty; (5) breach of implied warranty of merchantability; and (6) breach of implied warranty of fitness for a particular purpose. *See generally* [D.E. 38].

On August 18, 2023 Defendant moved to dismiss the Second Amended Complaint for failure to

2

state a claim.  *See* [D.E. 41].  Defendant's motion is fully briefed and ripe for adjudication.

**II.     Legal Standard**

Under Rule 12(b)(6), a defendant may move the court to dismiss a pleading for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all the factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).  However, any legal conclusions proffered by the plaintiff need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a Rule 12(b)(6) motion, the plaintiff's factual allegations, accepted as true, must "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "Plausibility requires that the factual allegations 'be enough to raise a right to relief above the speculative level[.]'"  *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  "Although it is true that the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests."  *Hall*, 846 F.3d at 765 (internal quotation marks and citation omitted).  When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see* Fed. R. Civ. P. 10(c).

Under the heightened pleading standard of Rule 9(b), a party bringing a cause of action alleging fraud must also "state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  The set of facts that must be pled with particularity varies based upon the nature of the fraud being alleged.  *See infra* Section III(A) (discussing Rule 9(b)'s pleading applicability to negligent misrepresentation claims). While a plaintiff is required to plead the allegedly fraudulent conduct with particularity, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made

3

aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

**III.     Discussion**

Defendant has moved to dismiss Plaintiff's claims for (1) negligent misrepresentation (Count I); (2) negligent manufacturing defect (Count II); (3) warranty manufacturing defect (Count III); (4) breach of express warranty (Count IV); (5) breach of implied warranty of merchantability (Count V); and (6) breach of implied warranty of fitness for a particular purpose (Count VI). [D.E. 41]. The court will address each claim in turn.

A.    Negligent misrepresentation

Defendant moves to dismiss Plaintiff's negligent misrepresentation claim on multiple grounds: (1) Plaintiff fails to allege sufficient facts to establish that it justifiably relied on Defendant's alleged representations; (2) the purchase contract merger clause prevents Plaintiff from relying on Defendant's sales materials; (3) Plaintiff's claim is precluded by the economic loss rule because the sale of the DreamPrep machine is based on a contract between the parties; (4) Defendant's alleged representations pertain to future occurrences; and (5) Defendant's alleged representations were merely opinions and puffery. [D.E. 41] 2.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 158—59, 796 S.E.2d 827, 830 (2017) (citations omitted). "If the plaintiff could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Cummings v. Carroll*, 270 N.C. App. 204, 221, 841 S.E.2d 555, 568, review allowed, 376 N.C. 525, 851 S.E.2d 42 (2020) (citation omitted).

Where a plaintiff pleads fraud, Rule 9(b) requires it to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "Claims of negligent misrepresentation also fall within the

4

purview of Rule 9(b)." *Rohlik v. I-Flow Corp.*, No. 7:10-CV-173-FL, 2011 WL 2669302, at *2 (E.D.N.C. July 7, 2011) (quoting *Dealer's Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F.Supp.2d 579, 590 (M.D.N.C.2004)). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999); *see also Food Lion, LLC v. Schuster Mktg. Corp.*, 382 F.Supp.2d 793, 797 (E.D.N.C.2005) (applying *Harrison* to a North Carolina common law fraud claim).

i. *Justifiable reliance*

Defendant argues that Plaintiff could not have justifiably relied on Defendant's alleged misrepresentations because Plaintiff never "made a reasonable inquiry into Defendant's alleged representations" and Defendant "expressly disclaimed potential software problems in the executed Terms of Sale." [D.E. 42] 4—5. The court takes each in turn.

"The element of justifiable reliance is demonstrated by alleging that a plaintiff made a reasonable inquiry into the representations at issue, or that he was denied the opportunity to investigate, or that he could not have learned of the true facts through reasonable diligence." *Pike v. Wells Fargo Bank, N.A.*, No. 7:20-CV-00219-M, 2021 WL 2445893, at *3 (E.D.N.C. June 15, 2021), on reconsideration, No. 7:20-CV-00219-M, 2022 WL 1196694 (E.D.N.C. Apr. 21, 2022) (citing *Rountree*, 252 N.C. App. at 162, 796 S.E.2d at 832). The reasonableness of a plaintiff's reliance on the alleged misrepresentations and omissions of a defendant are generally issues for the jury, "unless the facts are so clear that they support only one conclusion." *Hudgins v. Wagoner*, 204 N.C. App. 480, 491, 694 S.E.2d 436, 445 (2010) (citations omitted).

First, Plaintiff has plausibly alleged that it "could not have learned of the true facts through reasonable diligence[,]" and instead relied on "Defendant's own representations and documents describing the [DreamPrep] and its capabilities." [D.E. 48] 4. For example, Plaintiff attaches two brochures provided by Defendant in 2020 that describe the DreamPrep's "[e]nhanced process security" and "[e]xtended walkaway operation," both allegedly selling points for Plaintiff. [D.E. 38-2] 5. Plaintiff states the DreamPrep was not able to perform these automated functions at a basic level. [D.E. 38] ¶¶ 35—36.

5

Moreover, the DreamPrep is complex genetic laboratory equipment "manufactured, marketed, sold[,] and leased" by Defendant. [D.E. 38] ¶ 10. If Plaintiff wanted to buy a DreamPrep, it had to go through Defendant. *Id*. Plaintiff states that it did not have the ability to perform an independent investigation and had to rely on Defendant's marketing materials. [D.E. 38] ¶¶ 19—21. North Carolina recognizes that a duty of care "may arise between adversaries in a commercial transaction[,]" where the seller "was the only party who had or controlled the information at issue" during the process of negotiations, "and the buyer had no ability to perform any independent investigation." *Roundtree*, 252 N.C. App. at 161, 796 S.E.2d at 832 (quoting *Kindred of North Carolina, Inc. v. Bond*, 160 N.C. App. 90, 584 S.E.2d 846 (2003)) (cleaned up). In that case, "the seller owe[s] a duty to the buyer during the course of negotiations to provide accurate, or at least negligence-free financial information about the [product]." *Id*. Based on the facts alleged, Plaintiff has plausibly stated that it "reasonably relied" on Defendant's pre-contractual representations.[1]

Second, Count I is not barred by the "SOFTWARE" warranty language in the contract "TERMS OF SALE." Defendant asserts that "[m]ost, if not all, of Plaintiff's alleged defects would have resulted from software failures[,]" and Defendant "DOES NOT GUARANTEE THAT USE OF THE SOFTWARE WILL BE UNINTERRUPTED OR ERROR FREE." [D.E. 42] 5; [D.E. 38-3] 8. The court cannot speculate as to what issues, software or not, underly each of the alleged DreamPrep defects. Defendant itself acknowledges that some of the alleged DreamPrep defects may have non-software causes. *See* [D.E. 42] 5 ("**[m]ost**, if not all . . .") (emphasis added).

Plaintiff has adequately alleged that it reasonably relied on Defendant's pre-contractual

---

[1] Defendant's reliance on *Value Health Sols. Inc. v. Pharm. Rsch. Assocs., Inc.* is unavailing. [D.E. 50] 1. In that case, the court found no justifiable reliance where [counterclaimant] was a "large, sophisticated [contract research organization] who negotiated the [asset purchase agreement] for a period of more than a year, frequently providing Plaintiff with input as to the functionality required from the [product] and engaging in regular interactions with Plaintiff during the development of the software." *Value Health Sols. Inc. v. Pharm. Rsch. Assocs., Inc.*, No. 18-CV-12318, 2019 WL 6049988, at *10 (N.C. Super. Sept. 6, 2019). Here, the parties engaged in an arms-length transaction for the purchase of laboratory equipment; Plaintiff does not allege it was purchasing bespoke products or provided Defendant with any "input as to the functionality required." *Id*.

representations.

### ii. Merger clause

Next, Defendant argues that Count I is barred by the merger clause in the contract. [D.E. 42] 5. The clause states in relevant part, that:

> These General Terms of Sale and the quote to which they are attached constitute the entire agreement between and understanding of the parties, and supersede all prior agreements or understandings, whether written or oral, with respect to this subject matter. Except as expressly stated herein, no terms, conditions, or warranties, other than those written in these Terms of Sale, and no amendments or modifications of these Terms of Sale will be binding on the parties unless in writing and signed by Tecan and customer.

[D.E. 38-3] 10. According to Defendant, Plaintiff cannot rely on statements made outside of the purchase contract, including any representations in the marketing materials. [D.E. 42] 6.

Indeed, "North Carolina recognizes the validity of merger clauses and has consistently upheld them." *Zinn v. Walker*, 87 N.C. App. 325, 333, 361 S.E.2d 314, 318 (1987). But "the weight of authority holds that [merger clauses] should not be given preclusive effect where there is a triable issue that entry into the agreement containing the [clause] was induced by fraud or negligent misrepresentation by the party invoking the disclaimer, as here." *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 1134453, at *11 (E.D.N.C. Jan. 25, 2011), report and recommendation adopted, No. 5:07-CV-275-D, 2011 WL 1134447 (E.D.N.C. Mar. 24, 2011) (denying summary judgment on negligent misrepresentation claim) (citations omitted); *see Republic Indus., Inc. v. Atlantic Veneer Corp.*, 166 F.3d 1210 (Table), 1999 WL 7859, at * 1 (4th Cir. 11 Jan. 1999) (holding that "barring fraud" court would enforce disclaimer provisions in contract).

Plaintiff has plausibly alleged it was induced to enter the DreamPrep purchase contract by negligent pre-contractual misrepresentations. [D.E. 38] ¶¶ 33—34; *see supra* III.A.i. Thus, at this stage the court cannot determine the preclusive effect of the merger clause.

### iii. Economic Loss

Defendant also states that Count I is barred by the economic loss rule, as Plaintiff's alleged damages

7

sound in contract, not in tort. [D.E. 42] 6—7.

"North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." *Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 154 (E.D.N.C. 2023) (dismissing negligent misrepresentation claim where plaintiff "failed to plausibly allege that . . . claim [fell] outside of the scope of the contract . . . or the extended service agreement") (citations omitted). However, a "narrow exception to the economic loss rule" exists for "negligent misrepresentation claim[s]." *Id*. (citations omitted). In *Silicon Knights*, the court found that such an exception applied where claimant allegedly "relie[d] on alleged misrepresentations and omissions that . . . [were] not coterminous with the commitments made in the [contract]. 2011 WL 1134453 at *12 (citing *Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 136, 225 S.E.2d 797, 809 (1976) (allowing fraud claims which incorporated the allegations in breach of contract claims where defendant's misstatements had tort overtones and caused economic injury)). Here, Plaintiff alleges Defendant made numerous pre-contractual misrepresentations about the DreamPrep's capabilities, not within the four corners of the contract, that induced Plaintiff to make the purchase. [D.E. 38] ¶¶ 33—34. Thus "even if [Defendant] complied with the [purchase contract], [Plaintiff] could still conceivably have suffered damages from a failure by [Defendant] to live up to the purportedly fraudulent promises and other misrepresentations and omissions it made." *Id*. Indeed, Defendant contends that "it never committed itself in the [purchase contract] to the matters that are the subject of the alleged misrepresentations and omissions, relying on the disclaimer provision and other provisions of the [purchase contract]." *Id*.; *see generally* [D.E. 41].

Based on the facts alleged, Plaintiff has stated a claim for negligent misrepresentation that is exempted from the economic loss rule.

### iv. Puffery

Defendant also argues that any statements made in the attached DreamPrep product brochures amount to nonactionable opinion or puffery. Defendant points to several alleged misrepresentations identified by Plaintiff:

- The "DreamPrep unit would allow for 'seamless automation.'" [D.E. 38] ¶ 33.
- "DreamPrep unit's benefits included [e]nhanced process security with Active Stop and Resume and Method Recover options to minimize the risk of 'washing away thousands of dollars' in lost samples and reagents." *Id*. at ¶ 34.
- DreamPrep unit's benefits included "[e]xtended walkaway operation, thanks to easy integration of 1D/2D barcode readers, thermocyclers and microplate readers, and a range of storage options for plates and tips." *Id.*

According to Defendant, terms like "seamless," "enhanced," and "extended" lack certainty and amount to opinion. [D.E. 42] 10.

Fraud generally requires that the misrepresentations or omissions relate to facts and not opinions, sales talk, or promissory statements. *Wilson v. Popp Yarn Corp.*, 680 F.Supp. 208, 215 (W.D.N.C.1988) (statements of opinion or puffery are generally not actionable as fraud); *American Laundry Mack Co. v. Skinner*, 225 N.C. 285, 290, 34 S.E.2d 190, 194 (1945) (noting general rule that promissory representations cannot constitute actionable fraud). But "[t]he determination whether a particular statement is one of fact or opinion and whether the statement was made with an intent to deceive is normally left to the jury." *Silicon Knights, Inc.*, 2011 WL 1134453 at *7.

The court cannot make judgment calls at this stage about whether words like "seamless," "enhanced," and "extended" amount to nonactionable puffery or negligent misrepresentation. Moreover, Plaintiff has identified additional alleged misrepresentations in the sales literature that do not include this language. *See* [D.E. 38] ¶ 19.

### v. Future promise

Finally, Defendant argues that all the alleged pre-contractual misrepresentations identified are nonactionable future promises. [D.E. 42] 8 (citing *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1215 (M.D.N.C. 1996) (Negligent misrepresentation "generally cannot be to a future occurrence because the determination of truth or falsity must be made at the time of the representation.")). As an example, Defendant points to the statement that "the DreamPrep *would* allow for 'seamless automation'"; "would" according to Defendant turns the language into a future promise rather than a present fact. *Id*. (citing [D.E. 38] ¶ 33).

Defendant misconstrues its own document; the relevant brochure contains a header reading

9

"[s]eamless automation", implying that the DreamPrep has this functionality *at present*, not at a hypothetical future date. *See* [D.E. 38-2] 6. Defendant also ignores other statements identified by Plaintiff that speak to the DreamPrep's present capabilities. *See, e.g.* [D.E. 38] ¶ 18; [D.E. 38-2] 5 (DreamPrep's "[b]enefits include:" "[e]nhanced process security" and "[e]xtended walkway operation[.]").

Count I survives the Motion.

### B. Manufacturing defect

Defendant argues that Plaintiff's negligence and warranty product liability claims (Counts II and III) fail because "Plaintiff fails to allege that a product defect in the DreamPrep caused Plaintiff bodily injury or property damage." [D.E. 42] 11. The crux of the parties' disagreement is whether the "gene sequencing samples" purportedly destroyed by the DreamPrep machine are separate "property." [D.E. 52] 6.

A products liability claim grounded in warranty requires the plaintiff prove (1) the defendant warranted the product (express or implied) to plaintiff, (2) there was a breach of that warranty in that the product was defective at the time it left the control of the defendant, and (3) the defect proximately caused plaintiff damage. *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000) (citations omitted). A products liability claim grounded in negligence requires the plaintiff prove (1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage. *Id*. North Carolina follows the majority rule and does not allow the recovery of purely economic losses in an action for negligence. *AT&T Corp. v. Med. Rev. of N. Carolina, Inc.*, 876 F. Supp. 91, 93 (E.D.N.C. 1995) (citations omitted).

Moreover, "[w]hen a component part of a product or a system injures the rest of the product or the system, only economic loss has occurred." *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 619 (M.D.N.C. 2020) (*citing Jones v. Caterpillar, Inc.*, No. 7:16-CV-00331-H, 2017 WL 4865537, at *3 (E.D.N.C. July 11, 2017)). The parties contracted for the purchase of highly complex genetic laboratory equipment; at this stage the court cannot determine whether the "numerous batches of

10

gene sequencing materials" allegedly destroyed by the DreamPrep are "component part[s]" of the unit. *See id*. (denying dismissal as "determination of what constitutes 'a component part of a product or system' is a factual issue").

Counts II and III survive the Motion.[2]

    C.  Express warranty

Defendant moves to dismiss Plaintiff's express warranty claim (Count IV) on multiple grounds: (1) Plaintiff fails to allege that the DreamPrep defects were latent; (2) the purchase agreement disclaims liability for software issues; and (3) the merger clause bars the claim.

First, the parties disagree as to whether the alleged DreamPrep defects were "latent." The limited warranty reads in relevant part:

> THE CUSTOMER SHALL INSPECT THE PRODUCTS IMMEDIATELY AFTER RECEIPT FOR ALLEGED NON-CONFORMANCE WITH AGREED SPECIFICATIONS (HERE IN AFTER, SUCH NON-CONFORMANCE REFERRED TO AS A "DEFECT") **AND SHALL NOTIFY TECAN IN WRITING OF ANY NON-LATENT DEFECTS WITHIN 10 (TEN) DAYS AFTER RECEIPT OF THE PRODUCTS. OTHERWISE, THE PRODUCTS ARE DEEMED TO BE ACCEPTED WITHOUT RESERVATION AND ANY CLAIMS OF THE CUSTOMER AGAINST TECAN OUR WAIVED, INCLUDING ANY CLAIM FOR BREACH OF WARRANTY. THE CUSTOMER MUST NOTIFY TECAN IN WRITING OF ANY ALLEGED LATENT DEFECTS IMMEDIATELY AFTER THEIR DISCOVERY, BUT IN NO EVENT LATER THAN 12 (TWELVE) MONTHS AFTER RECEIPT OR ACCEPTANCE OF THE PRODUCTS.**

[D.E. 38-3] 9 (emphasis added). Defendant states that "Plaintiff conducted a full system test of the product upon delivery and Plaintiff agreed that the DreamPrep was correctly functioning upon delivery[,]" though "the Second Amended Complaint describes problems that were readily observable when operating the

---

[2] Defendant also briefly argues that even if the gene sequencing samples are separate "property," the "LIMITATION OF LIABILITY" clause in the purchase agreement bars Plaintiff's recovery. [D.E. 42] 14; [D.E 38-3] 9. In turn, Plaintiff argues that the court should disregard the limited warranty as failing its essential purpose. [D.E. 48] 16. Plaintiff's eventual recovery, if anything, is not at issue. At this stage, "this court looks to whether damage to the [genetic sequencing materials] constitutes damage to a component part of a system or damage to 'other property.'" *Jones v. Caterpillar, Inc.*, No. 7:16-CV-00331-H, 2017 WL 4865537, at *4 (E.D.N.C. July 11, 2017). For the reasons previously stated, the court cannot make this determination without further fact development.

11

DreamPrep." *Id*. Essentially, Defendant asks the court to improperly speculate about when the alleged defects were discovered; the court cannot do so. Based on the facts alleged, it is plausible that Plaintiff complied with the terms of the limited warranty. *See, e.g.* [D.E. 38] ¶¶ 27—28 (alleging follow up with Defendant 11 days after Defendant purportedly fixed DreamPrep issues). At minimum, more fact development is required.

Second, Defendant asserts that Plaintiff's problems were "based on software issues and not covered by the limited express warranty in the [purchase agreement]," thus Plaintiff's express warranty claim is precluded. [D.E. 42] 17. As previously discussed, *see supra* III.A.i, the court cannot speculate as to what issues, software or not, underly each of the alleged DreamPrep defects. Defendant itself acknowledges that some of the alleged DreamPrep defects may have nonsoftware causes. *See* [D.E. 42] 5 (describing "**[m]ost**" of the alleged defects as related to software issues) (emphasis added). Again, the court requires additional fact development before it can make this determination.

Third, Defendant argues that Count IV is barred by the merger provision. [D.E. 42] 15 (citing [D.E. 38-3] 10). Restated, "none of the alleged warranties were in the [purchase contract]" thus none are actionable. *Id*. at 14. The court cannot determine the effect of the merger provision without the parties' discovery on Plaintiff's negligent misrepresentation claim. *See supra* III.A.ii; *Silicon Knights, Inc.*, 2011 WL 1134453 at *11 ("[T]he weight of authority holds that [merger clauses] should not be given preclusive effect where there is a triable issue that entry into the agreement containing the [clause] was induced by fraud or negligent misrepresentation by the party invoking the disclaimer, as here.").

Count IV survives the Motion.

    D. Implied warranty claims

Finally, Defendant moves to dismiss Plaintiff's claims for breach of the implied warranties of merchantability (Count V) and fitness for a particular purpose. (Count VI). [D.E. 41] ¶ 11. Specifically, Defendant argues that "the Terms of Sales for the DreamPrep contained a[n] [enforceable] disclaimer and limitation of implied warranties clause" which bars Plaintiff from bringing these claims. *Id*.

Under North Carolina law, a party may disclaim the implied warranty of merchantability if the

12

Case 5:23-cv-00305-M-RN   Document 56   Filed 03/28/24   Page 12 of 14

disclaimer specifically mentions "merchantability" and is displayed conspicuously. *See* N.C. Gen. Stat. Ann. § 25-2-316(2). Language to "exclude or modify" any implied warranty of fitness "must be by a writing and conspicuous." *Id*. Whether a disclaimer is conspicuous "is a decision for the court." *Id*. § 25-1-201(10). A disclaimer is conspicuous if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id*. For example, terms are conspicuous if "[l]anguage in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." *Id*.

The parties' purchase contract contains a three-page "GENERAL TERMS OF SALES of TECAN US Inc" section, which includes at ¶ 10 a "DISCLAIMER OF WARRANTIES AND LIABILITY & LIMITATION OF REMEDIES." [D.E. 38-3] 8—10 (caps original). The "DISCLAIMER" reads in relevant part:

> 10. DISCLAIMER OF WARRANTIES AND LIABILITY & LIMITATION OF REMEDIES
> TECAN WARRANTS FOR THE WARRANTY PERIOD DESCRIBED IN THE NEXT PARAGRAPH THAT THE PRODUCTS MEET THE WRITTEN SPECIFICATIONS THAT MIGHT HAVE BEEN AGREED TO IN WRITING BETWEEN THE PARTIES, BUT MAKE NO OTHER WARRANTIES, EXPRESS OR IMPLIED. IN PARTICULAR, TECAN MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY OR ANY OTHER IMPLIED WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, QUIET ENJOYMENT, DATA ACCURACY AND SYSTEM INTEGRATION. TECAN SHALL NOT BE LIABLE IF THE PRODUCTS OR PARTS OF THE PRODUCTS ARE USED TOGETHER WITH INSTRUMENTS OR SOFTWARE OTHER THAN THOSE DELIVERED BY TECAN. TECAN DOES NOT GUARANTEE THAT USE OF THE SOFTWARE WILL BE UNINTERRUPTED OR ERROR-FREE

*Id*. at 9.

The disclaimer complies with North Carolina law and bars Plaintiff's implied warranty claims. *See Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 150 (E.D.N.C. 2023) (denying implied warranty claims based on conspicuous disclaimer); *Presnell v. Snap-On Securecorp, Inc.*, 583 F. Supp. 3d 702, 713

13

(M.D.N.C. 2022) (enforcing disclaimer where terms and conditions were "short" and language was in "all caps" and located in "Warranty" section). Here, the "DISCLAIMER" is in all caps and specifically references the implied warranties of "MERCHANTABILITY" and "FITNESS FOR A PARTICULAR PURPOSE[]." *Blackman*, 649 F. Supp. 3d at 151 (upholding disclaimer including language "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IS DISCLAIMED."). Because ¶ 10 is in all caps, the language appears significantly larger than the majority of the other "GENERAL TERMS."[3] The title of the section "DISCLAIMER OF WARRANTIES AND LIABILITY & LIMITATION OF REMEDIES" alerts the reader that the following language will affect the parties' warranty liability. Moreover, the parties to the contract are sophisticated and are represented by counsel. The disclaimer is enforceable and bars Plaintiff's implied warranty claims.

Counts V and VI are dismissed.

## IV. Conclusion

For the foregoing reasons, the Motion is GRANTED IN PART as follows:

A. The Motion is DENIED as to Counts I, II, III, and IV of the Second Amended Complaint; and

B. The Motion is GRANTED as to Counts V and VI of the Second Amended Complaint. [D.E. 38].

SO ORDERED. This 28th day of March, 2024.

RICHARD E. MYERS II
Chief United States District Judge

---

[3] Only two paragraphs in the "GENERAL TERMS" are all caps. The second is ¶ 11 "LIMITATION OF LIABILITY," which immediately precedes the "DISCLAIMER." [D.E. 38-3] 9.